IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 12-cr-346-JLK

**UNITED STATES OF AMERICA**,

      Plaintiff,

v.

**1.**    **JOHN DOE**
      a/k/a Habteab Berhe Temanu,
      a/k/a Habteab B Temanu
      a/k/a "TUFA",
      a/k/a Kefelegn Alemu,
      a/k/a Kefelegn Alemu Worku,
,

      Defendant.

---

## GOVERNMENT'S TRIAL BRIEF REGARDING ADMISSIBILITY OF A-FILES UNDER F.R.E. 803(6) AND 803(8) AND USE OF DECLARATION UNDER F.R.E. 902(11)

---

The United States of America, by John F. Walsh, United States Attorney for the District of Colorado, Lillian L. Alves, Special Assistant United States Attorney, and Brenda Taylor, Assistant United States Attorney, respectfully files this trial brief in support of its Motion to Admit Defendant's A-File Pursuant to F.R.E. 803(6) and 803(8) at Trial and to Allow Use of Declaration Under F.R.E. 902(11). The government's Motion seeks to provide the Court with advance notice of two evidentiary issues it may be called upon to resolve at trial: (1) the admissibility of the contents of an Alien File ("A-File") under F.R.E. 803(6) and F.R.E. 803(8); and

(2) the propriety of establishing a foundation as to hearsay and authenticity for the admission of documents within an A-File through a Declaration Concerning Authenticity of Records under F.R.E. 902(11). The Government will request a ruling on the issue of whether it has established the hearsay exception to these records at the motions hearing, currently scheduled for September 12, 2013.

### THE USE OF RULE 902(11) CERTIFICATIONS AND THE CONFRONTATION CLAUSE IN CRIMINAL PROSECUTIONS

The Tenth Circuit recently held that Rule 902(11) certifications of authenticity are not testimonial and that their use does not run afoul of the Sixth Amendment or the holding of *Crawford v. Washington*, 541 U.S. 36, 54 (2004). *U.S. v. Yeley-Davis*, 632 F.3d 673, 681 (10th Cir. 2011), *cert. denied,* 79 U.S.L.W. 3609 (U.S. Apr. 25, 2011) (No. 10-9775).   In *Yeley-Davis*, the court rejected the defendant's argument that a certification and affidavit signed by the record custodian of a cellular telephone company were testimonial on account of being prepared solely for use at trial.   *Id*. at 679-80.   The records in question provided information about each call made and received by the defendant's cellular telephone.   *Id*. at 677.   The court observed that the records were not "created simply for litigation," but rather they were kept for the cellular telephone company's "business purposes."   *Id*. at 679.

The *Yeley-Davis* court additionally rejected the defendant's reliance on *Melendez-Diaz v. Massachusetts*, 129 S. Ct. 2527 (2009), in which the Supreme Court held that forensic reports demonstrating that the material seized by police

was cocaine were testimonial.   *Melendez-Diaz*, 129 S. Ct. at 2530.   In rejecting

the defendant's argument, the *Yeley-Davis* court cited to language in

*Melendez-Diaz* observing that, "it is not the case, that anyone whose testimony

may be relevant in establishing the authenticity of the sample must appear in

person as part of the prosecution's case."   *Yeley-Davis*, 632 F.3d at 681 (citation

and internal punctuation omitted).

Other circuits have ruled similarly.   In *United States v. Adefehinti*, 510 F.3d

319 (D.C. Cir. 2007, amended 2008), the District of Columbia Circuit made a

thorough analysis of evidence submitted under F.R.E. 902(11) and addressed

Confrontation Clause concerns.   There, a number of defendants had been

convicted of charges arising out of a complex mortgage fraud scheme.   A large

part of the government's proof centered on complex real estate transactions

involving records of hundreds of loan applications, sales contracts, promissory

notes, verifications of deposit, verifications of employment and similar documents

on which banks relied in making loan decisions.   Documentary evidence of these

transactions was offered through the business records exception to the hearsay

rule stated at F.R.E. 803(6).   In many instances the government presented no

records custodian testimony but relied on certifications under Rule 902(11), which

permits authentication of certified domestic records of regularly conducted activity

without extrinsic evidence of authenticity, provided the records are admissible

under F.R.E. 803(6) and are accompanied by a certificate meeting Rule 902(11)'s

mandates.   The court noted that

> [t]he certificate must contain a 'written declaration of [the record's
> custodian or other qualified person ..., certifying' that the record (A)
> was made at or near the time of the occurrence of the matters set for
> by, or from information transmitted by, a person with knowledge of
> those matters; (B) was kept in the course of the regularly conducted
> activity; and (C) was made by the regularly conducted activity as a
> regular practice.   Fed.R. Evid. 902(11).   The required assertions
> are, of course, almost exactly the propositions needed for admission
> of a business record under Rule 803(6).   Here the disputed records
> were accompanied by certificates with assertions tracking Rule
> 902(11)'s specifications.

*Id.* at 324.

The defendants in *Adefehinti* argued that the records admitted under Rule

902(11) constituted testimonial evidence within the meaning of *Crawford*, and that

the admission of the records, accordingly, violated their Confrontation Clause

rights.   Their attack focused on two fronts:   (1) the custodians making the

assertions lacked knowledge of the propositions they certified, thus making those

propositions altogether unsupported; and (2) the assertions made by the

custodians in the Rule 902(11) certificates themselves constituted testimonial

evidence.   *Id.*

The District of Columbia Circuit rejected this challenge.   The court accepted

the proposition that the certifiers could not legitimately assert the records were

made at or near the time of the occurrence of the matters set forth in the records

due to lack of personal knowledge.   The court held, however, the "custodian need

–4–

not have personal knowledge of the actual creation of the document" and thus, the certifiers' lack of personal knowledge about the timing or method of the creation of the records was not fatal to admissibility.[1]   *Id.* at 325-26 (citation and internal punctuation omitted).   The *Adefehinti* court additionally observed that because of "*Crawford's* explicit conclusion that business records by their nature were not testimonial at the time of the Founding," that the same principle is extended "to evidence laying the foundation for such records' admission."   *Adelfehinti*, 510 F.3d at 328 (citation and internal punctuation omitted).   "Given that the records themselves do not fall within the constitutional guarantee provided by the Confrontation Clause, it would be odd to hold that the foundational evidence authenticating the records does."   *Id* (citation and internal punctuation omitted).*Id.* at 328. The court went on to hold that the notice provisions of Rule 902(11) provide a procedural protection that allows for a challenge by an adverse party, such as giving the party an opportunity to call the signatory of the certification as a witness, and that this protection comports with the requirements of *Crawford. Id.*

The Tenth Circuit has recognized the propriety of the introduction of such records under F.R.E. 902(11) so long as the notice provisions of the rule are followed.   *United States v. Bailey*, 133 Fed. Appx. 534, 2005 WL 1317292 (10th

---

[1] The *Adefehinti* court also held that an entity may adopt the business record of an outside source thereby "making" the record itself within the meaning of Rule 803(6). *Id.* at 325-26. When recently confronted with *Adefehinti's* conclusions regarding adoptive records, the Tenth Circuit offered no analysis regarding whether an entity can adopt the business record of an outside source in the Tenth Circuit, instead resolving the issue with a harmless error analysis.   *U.S. v. Irvin*, 682 F.3d 1254, 1265 (10th Cir. 2012).

Cir. 2005).   Here, the Government provided notice to Defendant's counsel via electronic mail on August 7, 2013 and by regular mail on August 12, 2013 of its intent to offer the contents of the Defendant's A-Files. Moreover, the A file records themselves were provided to the Defendant's counsel in discovery in August 2012.

## Admission of the contents of the A-File does not violate the Confrontation Clause.

In *United States v. Garcia*, 452 F.3d 36 (1st Cir. 2006), the First Circuit conducted an extensive analysis of the admissibility of the contents of an A-File in an illegal reentry prosecution.   In that case, the government offered, through the testimony of a records custodian with no personal knowledge of events referenced in the A-File including; (1) an affidavit from the defendant acknowledging his country of birth; (2) a fingerprint card signed by the alien, "Roberto G," with no date, alien registration number or other identifying information; and (3) a warrant of deportation which, testimony revealed, meant that an INS official witnessed the alien's departure from the United States on a particular date.   The defendant claimed on appeal that his right of confrontation was violated under *Crawford*.

The First Circuit agreed with the Fifth Circuit [*United States v. Valdez-Maltos* 443 F.3d 910 (5th Cir. 2006)], the Ninth Circuit [*United States v. Bahena-Cardenas*, 411 F.3d 1067, 1074-75 (9th Cir. 2005)], and the Eleventh Circuit [*United States v. Cantellano*, 430 F. 3d 1142, 1145 (11th Cir. 2005)], and held the warrant of deportation was not "testimonial," and, accordingly, was not subject to the

confrontation clause.   *Id.* at 41-42.   Since the decision in *Garcia*, the Eighth

Circuit has also concluded that warrants of deportation are not testimonial, and,

accordingly, not subject to the confrontation clause.   *U.S. v. Torres-Villalobos*,

487 F.3d 607, 613 (8th Cir. 2007) (observing that warrants of deportation "are

properly characterized as non-testimonial official records that were prepared

independent of this litigation.")

The Tenth Circuit has also held, in an unpublished case, that warrants of

deportation are not testimonial and thus not inadmissible hearsay:

> We believe warrants of deportation are non-testimonial . . . .   A
> warrant of deportation is a public record signed by a public official
> attesting to the fact that the individual in question actually left the
> country.   Its primary purpose is to enable immigration authorities to
> keep track of who has been deported and when.   It would be useful,
> for example, if the deported individual later sought lawful admission to
> the United States.   As the Eighth Circuit recently noted, 'warrants of
> deportation are produced under the circumstances objectively
> indicating that their primary purpose is to maintain records concerning
> the movements of aliens and to ensure compliance with orders of
> deportation, not to prove facts for use in future criminal prosecutions.'

*United States v. Salinas-Valenciano*, 220 Fed. Appx. 879, 2007 WL 987423 (10th

Cir. 2007).   Additionally, the Tenth Circuit held in a published decision, citing to

the First Circuit's *Garcia* holding, above, that information kept in an ICE database

known as the Central Index System (CIS) "which archives records of entry

documents, such as permanent resident cards, border crossing cards, or

certificates of naturalization" constitutes a non-testimonial, admissible public

record because it was "created in connection with ongoing regulatory functions

independent of prosecution and public officials are under a duty to accurately create records."   *U.S. v. Mendez*, 514 F.3d 1035, 1043-44 (10th Cir. 2008). Because the records in the Defendant's A file do not constitute "a statement that a reasonable person in the position of the declarant would objectively foresee might be used in the investigation or prosecution of a crime" they are not testimonial and the admission of these records does not raise Confrontation Clause concerns, even after *Crawford*.   *U.S. v. Keck*, 643 F.3d 789, 697 (10th Cir. 2011).

### ADMISSIBILITY OF THE DEFENDANT'S A FILE

In this case, the government intends to introduce various documents created, received, and maintained by the Department of Homeland Security ("DHS")[2] that show that the Defendant, using the name, identity, and account of persecution of Habteab Berhe Temanu, applied for and received classification as refugee in Kenya, entered the United States as a refugee, applied for and received adjustment of status to lawful permanent resident, and applied for and received naturalization.   The evidentiary foundation for these documents will be offered in part in the form of two Declarations Concerning Authenticity of Records, attached

---

[2]   On March 1, 2003, Congress abolished the Immigration and Naturalization Service (INS) and transferred its functions to the Department of Homeland Security ("DHS").   6 U.S.C. §§ 552, 557.   Legacy INS's functions were divided among three agencies contained within DHS: (1) United States Citizenship and Immigration Services (USCIS); (2) Immigration and Customs Enforcement (ICE); and (3) Customs and Border Protection (CBP).   *Dent v. Holder*, 627 F.3d 365, 368 n. 4 (9th Cir. 2010).   "While USCIS is the custodian of the A-file, all three components create and use A-files."   *Id.*

hereto, which will be marked for identification as government exhibits at trial. These declarations refer to the foundation for the records contained within Defendant's Alien File or A-File.   The government intends for the declarations to serve as a foundational requisite regarding hearsay and authenticity for a number of immigration documents from Defendant's A-File that the government will offer as exhibits in its case-in-chief.   The government will establish relevance through separate witness testimony.   The government also intends for the declaration to serve as a foundational requisite regarding hearsay and authenticity for other documents from Defendant's A-File that the government does not currently intend to offer in its case-in-chief, but that may become relevant after cross examination of government witnesses or during the testimony of defense witnesses.   A number of the documents are applications that the defendant completed or signed himself, making them admissible as non-hearsay statements under Fed.R.Evid. 801(d)(2)(A) and as exceptions to the rule against hearsay as statements against interest within the meaning of Fed.R.Evid 804(b)(3).

### A<span></span>PPLICABLE L<span></span>AW

## Documents within an A-File are admissible as business records or public records.

The Defendant's A-File is the central, official document repository created and assigned to Defendant when he contacts immigration officials within DHS or the Legacy INS.   This includes agencies within DHS such as, as it applies to this

case, U.S. Citizenship and Immigration Services (USCIS) and the USCIS Refugee Affairs Division.

When an alien such as the Defendant is contacted by immigration officials in the United States, he is assigned a unique "Alien Number," which begins with an "A" followed by eight or nine numbers. Depending on the nature and extent of the alien's contact with DHS, a documentary Alien File, also known as an A-File, is created.   All subsequent documentation regarding the alien, including biographical information, photographs, fingerprints, administrative documents, deportations, and judgments of conviction or other court documents, is deposited in the Alien File or files and maintained by DHS in order for the agencies within DHS to carry out agency operations.

The Tenth Circuit, along with other courts, has upheld the admissibility of immigration records from the A-File under F.R.E. 803(8), the public records exception to the hearsay rule.   The issue arises most often in prosecutions involving illegal re-entry after deportation.   Because there, as here, the records come from A files, the analysis from illegal re-entry cases is equally applicable to the immigration records in this case.   *See, e.g.*, *United States v. Figueroa*, 221 F.3d 1353, 2000 WL 963346 at *5 n.5 (10th Cir. July 12, 2000) (unpublished) ("[w]e agree with [the Fifth and Ninth Circuits] that the warrant of deportation is admissible [under Rule 803(8)(B)] to prove a defendant was in fact deported") (citing *United States v. Quezada*, 754 F.2d 1190, 1193-94 (5th Cir. 1985), and

*United States v. Hernandez-Rojas*, 617 F.2d 533, 534-35 (9th   Cir. 1980)); *United States v. Loyola-Dominguez*, 125 F.3d 1315, 1317-18 (9th Cir. 1997).   As the Ninth Circuit noted in *Loyola-Dominguez*, "although such records are made by law enforcement agents, they reflect only 'ministerial, objective observation[s]' and do not implicate the concerns animating the law enforcement exception to the public records exception."   125 F.3d at 1317-18 (citations omitted).   The Eleventh Circuit has concurred with the Tenth, Ninth, Fifth and other circuits in upholding the admissibility of administrative deportation records.   The Eleventh Circuit observed, "[w]here, as here, the admitted records were prepared long before the alleged offense and relied on in daily INS operations, there are no hearsay concerns, for the 'custodian . . .   had no incentive to do anything other than mechanically record the relevant information.'"   *United States v. Agustino-Hernandez*, 14 F.3d 42, 43 (11th Cir. 1994) (holding that a warrant of deportation was properly admitted under Fed. R. Evid. 803(8)(B)).

The Tenth Circuit has also upheld the admissibility of immigration documents maintained in an A-File as business records under Fed. R. Evid. 803(6).   *United States v. Torres-Reyes*, 46 Fed. Appx. 925, 927-28 (10th Cir. 2002) (noting that "[w]hile the documents that Appellant contests do contain hearsay, they are admissible because they fall under an exception to the hearsay rule as records of regularly conducted activity pursuant to Fed.R.Evid. 803(6)."); *United States v. Hernandez-Herrera*, 952 F.2d 342, 343-44 (10th Cir. 1991)

(assuming that records maintained in an A file are business or public records and concluding that an INS agent was qualified to authenticate the documents). Under Rule 803(6), records of regularly conducted activity are admissible, even if they constitute hearsay, if a qualified witness provides a proper foundation concerning how such records are made and kept. The Tenth Circuit has focused on the evidentiary foundation regarding DHS or INS practices for creating and maintaining records, as well as the general nature of such immigration documents. *See Hernandez-Herrera*, 952 F.2d at 343-44.   Such an evidentiary foundation can be provided by a case agent who has "personal knowledge of the circumstances surrounding the making of the relevant INS forms . . . [and is] familiar with the recording procedures of the INS. . . [as well as] the record keeping practices of the INS."   *Id*. at 343.   This basis, together with the fact that A-File documents "are uniquely identifiable and relatively resistant to change," establishes a sufficient foundation of authenticity and reliability.   *Id*. at 344 (citations omitted).   This comports with the First Circuit's holding in *Garcia*, discussed above, in which the court held that the admission of all documents, including an affidavit and a fingerprint card, contained within the A-File were properly admitted as business records without testimony from anyone who entered the information onto the affidavit, the fingerprint card, or the warrant of deportation.   *Id*. at 40.   The court further held the A-File was sufficiently authenticated under Federal Rule of

Evidence 901(a) because the finder of fact had before it "evidence sufficient to support a finding that the matter in question is what its proponent claims":

> The direct testimony of a custodian or a percipient witness is not a *sine qua non* to the authentication of a writing.   Thus, a document's appearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances, can, in cumulation, even without direct testimony, provide sufficient indicia of reliability to permit a finding that is authentic.

452 F.3d at 40 (citation omitted).

In *Garcia*, the government introduced the A-Files through the testimony of a records custodian.   Here, the Government is prepared to offer portions of Defendant's A-File through either of its Declarations Concerning Authenticity of Records, signed by Barbara Koenigsberg and Reba Anderson, indicating that records identified in the declaration are public records of the United States Immigration and Customs Enforcement and its predecessor agency, the Immigration and Naturalization Service.   The records thus would be offered under Federal Rule of Evidence 902(11).   (Ms. Koenigsberg and/or Ms. Anderson also can be made available to testify, should the Court determine that the Rule 902(11) certifications are somehow inadequate.)

Based upon the foregoing, the Government will argue that a proper foundation for the admission of documents from Defendant's A-Files has been established through the use of the Declaration and the records so authenticated,

and, if deemed relevant as a result of other witness testimony, are admissible at

trial.

Respectfully submitted this 27th day of August, 2013.

JOHN F. WALSH
United States Attorney


By:   s/ Lillian L. Alves
LILLIAN L. ALVES
Special Assistant United States Attorney
BRENDA TAYLOR
Assistant United States Attorney
United States Attorney's Office
1225 17th Street, Suite 700
Denver, Colorado 80202
Telephone: (303) 454-0100
Telecopier: (303) 454-0406
E-mail: Brenda.Taylor2@usdoj.gov
E-mail: Lillian.L.Alves@ice.dhs.gov

ATTORNEYS FOR THE GOVERNMENT

## CERTIFICATE OF SERVICE

I hereby certify that on this <u>27th</u> day of August, 2013, I electronically filed the foregoing **GOVERNMENT'S TRIAL BRIEF REGARDING ADMISSIBILITY OF A-FILES UNDER F.R.E. 803(6) AND 803(8) AND USE OF DECLARATION UNDER F.R.E. 902(11)** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail address:

Matt Golla
Matt_Golla@fd.org


*s/ Denise Guerra*
DENISE GUERRA
Legal Assistant
U.S. Attorney's Office
1225 Seventeenth Street, Suite 700
Denver, Colorado  80202
Telephone:  (303) 454-0100
Facsimile:  (303) 454-0403
Email:  denise.guerra@usdoj.gov